salaries and opportunities for advancement increased greatly for individuals with my experience; and because it was interpreted negatively by others, for example Carol Maczka who wrongly alleged that I had been institutionalized (per statement of Merritt Lake to EEO investigator).

43. As a result of the above, I experienced emotional distress over the negative implications, and I experienced anxiety because I had been provided no explanation or due process that would enable me to bring an end my forced exile.

44. While I was on administrative leave, in December, 2000, a few weeks after I participated in an employee civil rights demonstration, the Agency issued a proposal to remove me for the "efficiency of the service," falsely alleging that my duties required a security clearance and that my position required a clearance as a condition of employment.

45. Although I responded immediately with facts disputing the allegations, the Agency waited three years, until January, 2003, to issue a decision.

46. The Agency again denied due process in its handling of my appeal of its revocation of my security clearance, when it waited from January, 2000, to June, 2002, to provide the required hearing or "personal appearance," denied me the right to appear before a panel that would review my appeal, barred my expert attorney at the door, withheld evidence in its possession, arbitrarily excluded half of my evidence from the record, refused to provide a detailed explanation of the charges against me, and arbitrarily restricted my hearing to 90 minutes.

47. The Agency relied on its denial of due process regarding my security clearance to deny me a permanent promotion to Branch Chief, a position that, per restrictions in the announcement, logically included only current branch employees, and I was the only employee in the branch with a specialized degree in emergency planning and extensive experience with it's

complaint. USDA correspondence frequently has been delayed in arrival, often due to an incorrect address, despite Plaintiff's filing of address changes. Indeed, the address on the referenced November 14 letter is addressed to "8710 Hayshed Lane, Columbia, MD." At the time, Plaintiff lived in Silver Spring, Maryland. Plaintiff's recollection is that she was timely in responding to every notice of the right to file a formal complaint. Defendant has not provided any documentation that its November 14 dated letter actually was mailed on that date or any documentation of the date of delivery at the correct address. On July 29, 2005, Plaintiff filed the claim in U.S. District Court, as Complaint 05-1507 (GK).

The McGrath Declaration falsely describes the complaints Plaintiff has filed with the Defendant Agency by including none of Plaintiff's complaints filed prior to May, 2004, for which the Agency issued multiple Reports of Investigation, participated in discovery, and filed numerous motions. Mr. McGrath is surely aware of Plaintiff's earlier complaints, filed between 1996 and 1999, because it is Plaintiff's recollection that he previously met with her and her attorney to review the investigators' reports for those complaints.

Plaintiff notes that the misleading Declaration is typical of the Defendant Agency's handling of Plantiff's complaints, and believes the Agency's blatant subterfuge deserves to be sanctioned.

**E.  Plaintiff's complaint does not assert whistleblower claims under 5 U.S.C. section 23029(b)(8).**

Defendant protests that the Court has no jurisdiction of whistleblower claims under 5 U.S.C. section 23029(b)(8). However, the current Complaint does not make such a claim. Defendant provides no clues as to the source of its concern, except to provide a footnote referring to Plaintiff's criticism of the FSIS "COOP" and "CSEPP" plans, mentioned in the

10