2) I have learned that my official personnel file does not include any copy of my latest performance appraisal, which was "outstanding," or two Spot Awards recognizing my accomplishments in developing emergency kits and exercises. Moreover, the file includes false information that, along with the omissions, would unfairly and negatively affect any decisions made on the basis of that file. This is part of a pattern of false information about my abilities and accomplishments.

3) I have been subjected to discrimination and retaliation regarding awards, and regarding assignments that would reasonably lead to awards. I and other employees who worked on an emergency exercise, "Broken Image," were given Spot Award certificates. Previously, I had been told that my work on the exercise had been hugely successful and was highly regarded by Agency senior officials. Other employees, whose accomplishments were less inventive and did not require as much time and effort, also were given certificates. But, although the supervisor said those present would be receiving cash awards, my certificate was not accompanied by any of the paperwork required to accompany a case award. No such paperwork is including in my official personnel file, either. Indeed, my OPF does not include copies of any of the two certificates I have received..

I was originally assigned to develop and coordinate the Broken Image exercise. After the project began receiving praise, the coordinator role on that project was taken away from me and given to a lower ranked male employee with lesser skills. Since that time, the same male employee has been designated the coordinator for all subsequent emergency exercises. Notably, that employee, Ronald Graham, has previously engaged in retaliation against me, slandering my skills and character, in support of discrimination and retaliation by more senior officials. Despite knowing this, senior managers have persisted in giving Mr. Graham regular access, while formally ordering me to communicate only with my immediate supervisor. In this manner, my viewpoints and abilities are routinely excluded in favor of a male employee who engaged in unlawful activities.

Subsequently, I was given a small role in a later exercise, "Nerve Pulse," coordinated by Mr. Graham. But, after I filed an EEO complaint, Mr. Graham informed me that my services would not longer be needed for the exercise. This was confirmed by Suzanne Rigby, my immediate supervisor at that time. As a result, I was excluded from awards that were subsequently given to those who participated in the exercise. Being denied fair consideration for cash awards would be consistent with a pattern in which I am denied awards given to all others who worked on a project, or on a particular staff. Also, available evidence suggests that, when I do receive an award, it is a lesser one, even when my contributions are more significant.

4) Inaccuracies in my official personnel file (OPF) show evidence of bias and retaliation. The maintenance of a negatively biases personnel file would expectedly have negative impacts on my career, including my pending application for a position.

The OPF includes no copy of my most recent performance appraisal, signed by Lori Thomas, giving me a rating of "outstanding." It does not include copies of either of two Spot Award certificates issued in the past year. But, the OPF DOES include multiple copies of documentation of false charges and the negative actions that resulted from them. With regard to the false charges, the Agency denied me due process and gave me no opportunity to provide any input before the negative actions were taken. The negative actions included denial of a within-grade (pay) increase for FY 1998, and a reprimand for late payment of a balance on the Agency credit card, issued for travel expenses.

The denial of my regularly schedule pay increase had no basis in fact. I was not given a performance appraisal documenting inadequate performance. In fact, I received no appraisal at all for FY 1998, and had been given few duties to perform, in retaliation for my protected activities. For several months in 1999, I had virtually no duties. The lack of any basis for denying the routine pay increase is demonstrated by the fact that the Agency ultimately paid the increase and the failure of the Agency to put me on a performance improvement plan. Thus, the multiple documents in my OPF, indicating a denial occurred, are false and misleading.

Regarding the documentation of a reprimand for late credit card payment, FSIS violated written procedure and due process by failing to allow me any opportunity to respond to the charges. Furthermore, an OIG report shows that the issuance of a reprimand was inconsistent with USDA/FSIS written procedure and implementation.

The above incidents are part of a pattern of discrimination and retaliation through false charges and denied due process. The propagation of false and disparaging information about me also is part of a pattern of discrimination and retaliation.

5) I continue to be denied access to information, opportunities, assignments and senior personnel that is available to males, and to females with no prior protected activity. Furthermore, denial of information expectedly would have negative impacts on those assignments I do receive, which typically are minor and are not valued by reviewing officials and more senior management. Unlike other employees, I have even been placed under written orders restricting my ability to communicate with anyone but my immediate supervisor. Meanwhile, a male coworker, Ronald Graham, freely communicates with Agency officials at the highest levels, sharing with them his negative opinions of me and other women on the staff. This is part of a pattern of negative bias on the part of Mr. Graham and other FSIS officials, and of reprisal for protected activities.

The above discriminatory and retaliatory practices, and others, have served to undermine USDA and FSIS emergency programs. I have been prevented from obtaining information needed to create a radiological emergency plan for the Agency, and that denial of information undermines the Agency's ability to participate appropriately in a multi-million-dollar national emergency exercise that conceivably could require implementation of that plan. Thus, discrimination and retaliation waste taxpayer dollars and weaken homeland security.

Signed,

*Linda M. Lewis*

Linda M. Lewis
(202) 210-8539

cc  FSIS Civil Rights Office

```
                    *********************
                    ***   TX REPORT    ***
                    *********************

        TRANSMISSION OK

        TX/RX NO                  2255
        CONNECTION TEL                      912027208046
        SUBADDRESS
        CONNECTION ID             USDA CR
        ST. TIME                  03/08 14:10
        USAGE T                   01'46
        PGS. SENT                 3
        RESULT                    OK
```

March 8, 2005

Director
Office of Civil Rights
U.S. Department of Agriculture
Room 326-W, Whitten Building
1400 Independence Avenue, SW
Washington, DC 20250-9410

Subject: New EEO Complaint

I wish to file a new complaint of discrimination (gender/female, age/54, perceived disability) and reprisal for prior EEO activity, in violation of federal civil rights laws. I cite the following justifications:

1) In 2004, as an employee of the Office of Food Security and Emergency Preparedness (OFSEP), I filed two EEO complaints of discrimination and reprisal against officials of the Agency, the second complaint against OFSEP being submitted twice (November 12 and December 10).

I submitted an application by fax on November 19, the closing date, for the position of Physical Scientist, GS-1301-14 (Bulletin: FSIS-05-009), which includes the responsibility of representing FSIS and USDA in activities of the Chemical Stockpile Emergency Preparedness Program and advising the head of the office on protection of the food supply from chemical threats. Those are the same responsibilities that I carried out, successfully, at FSIS from 1992 through 1998, as a GM-13, until the duties were taken from me in reprisal for my protected activities, and given to a less-qualified male employee.

When the above position was posted on October 22, 2004, the announcement stated that the position was open to USDA employees. After I submitted an application that fully met the stated requirements of the position, USDA apparently withdrew the announcement and re-issued it. The new announcement was identical to the previous one except that FSIS had expanded eligibility to "All Qualified U.S. Citizen.s" I was never informed of these changes. The new announcement did not include the usual wording that all who had applied to the first announcement would automatically be considered for the second.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB 1 3 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LINDA M. LEWIS, )
8811 Colesville Road #210, )
Silver Spring MD 20910, ) CASE NUMBER 1:06CV00255
(202) 210-8539, )
Plaintiff, ) JUDGE: Gladys Kessler
v. )
) DECK TYPE: Employment Discrimination
MIKE JOHANNS, )
SECRETARY OF AGRICULTURE, ) DATE STAMP: 02/13/2006
Room 200-A, Whitten Building, )
1400 Independence Ave., SW, ) Demand for Jury Trial
Washington DC 20250, )
Defendant. )
)

JURY ACTION

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Linda M. Lewis was from September, 1992, through October 17, 2005, an employee of the Food Safety and Inspection Service, in the United States Department of Agriculture ("USDA"). Plaintiff, an emergency programs specialist (GM/GS-13) had graduated from the University of North Texas with a 4.0 GPA in second Bachelor of Science degree in emergency administration and planning. Despite this rare credential and history of high achievement, Plaintiff continuously suffered discrimination and reprisal throughout her USDA career, leading her to file several equal employment opportunity ("EEO") complaints with the Agency's Civil Rights office.

Plaintiff filed two such EEO complaints on December 10, 2004 and March 8, 2005. The Plaintiff requested a hearing by the Equal Employment Opportunity Commission (EEOC) for the December 10 complaint (EEOC No. 100-2006-00063X), but

there has been no decision by the Administrative Judge ("AJ") and more than 180 days have passed since the complaint was filed. The Agency failed either to formally investigate or dismiss the March 8 complaint (Exhibit A), and more than 180 days have passed since the complaint was filed.

Plaintiff therefore considers her administrative remedies exhausted pursuant to 29 CFR 1614.407, and hereby brings this claim of discrimination (based upon gender/female, age/55, and perceived disability), reprisal, violation of privacy, and denial of due process.

## II. JURISDICTION AND VENUE

a. This court has jurisdiction pursuant to the Privacy Act of 1974, 5 U.S.C. $ 522(a), as amended, the Rehabilitation Act of 1973, 29 U.S.C. $ 791 et seq., as amended, codified at 42 U.S.C. 12201-12204, 12210, and 12211, et seq., Title VII of the Civil Rights Act of 1964, as amended, and codified at 42U.S.C. 2000(e), the Age Discrimination in Employment Act of 1967, 29 U.S.C. $ 621 et seq., the Fifth Amendment, and 29 U.S.C. $$ 631, 633a, and the Americans with Disabilities Act, as amended, codified at 42 U.S. C., 12201-12204, 12210, and 12211, et seq.

b. Venue is proper in this District pursuant to 5 U.S.C. $ 552a(g)(5), 28 U.S.C. $ 1391, 15 U.S.C. 78 aa and 77v, and 7 U.S.C. Section 25(c).

## III. PARTIES

a. Plaintiff Linda M. Lewis, *pro se*, is a citizen of the United States and an employee retired on October 17, 2005, from the U.S. Department of Agriculture. Plaintiff resides at 8811 Colesville Road, #210, Silver Spring, Maryland, 20910.

b. Defendant Mike Johanns, the official representative of the United States Department of Agriculture ("the Agency"), is an agent of the United States Government, located at 1400 Independence Avenue, S.W., Washington, D.C. 20250.

## IV. STANDARDS OF LAW

a. The Privacy Act of 1974, 5 U.S.C. $ 522(a), as amended, which prohibits disclosure of any record which is contained in a system of records without a written request from the individual to whom the record pertains.

b. The Rehabilitation Act of 1973, 29 U.S.C. $ 791, as amended, requires affirmative action and nondiscrimination in employment by Federal agencies of the executive branch.

c. Title 5, section 2302, prohibits unlawful personnel practices.

d. The Americans with Disabilities Act, as amended, codified at 42 U.S. C., 12201-12204, 12210, and 12211, et seq.

e. Title VII of the Civil Rights Act of 1964, as amended, and codified at 42 U.S. C. 2000(e) prohibits discrimination based on race, color or sex.

f. The Age Discrimination in Employment Act of 1967, as amended, and codified at 42 633a, prohibits discrimination on the basis of age.

g. The Fifth Amendment to the Unites States Constitution, provides the right to due process.

## V. FIRST CAUSE OF ACTION

The Plaintiff is informed and believes that she has been subjected to violations in accordance with the Standards of Law indicated in section IV, as described below.

3

The Agency violated Plaintiff's right to privacy of personnel and medical records, and Agency officials disparaged her through actions such as the following:

a. Agency officials falsely disparaged the Plaintiff, told co-workers she had a history of mental illness, and denied the Plaintiff training and assignments based on the perceived disability.

b. The Agency failed to keep accurate personnel files for the Plaintiff.

c. The Agency has repeatedly failed to protect and control sensitive personnel and medical records and information regarding the Plaintiff.

## VI. SECOND CAUSE OF ACTION

The Plaintiff is informed and believes that she has been subjected to violations in accordance with the Standards of Law indicated in section IV, as described below.

Plaintiff previously filed complaints of reprisal and discrimination against the Agency, and had been communicating with the Agency's Civil Rights office regarding a 2004 complaint when the Agency took retaliatory actions such as the following:

a. The Agency denied the Plaintiff work that she had long performed, had performed successfully, and was better qualified to perform than others to whom such work was assigned.

   i. Without basis the Agency removed the Plaintiff from her duties as the coordinator of an emergency exercise, although supervisors had recently praised her work on the project.

   ii. Plaintiff increasingly was assigned to short-term, low-profile projects.

   iii. Plaintiff's traditional responsibilities, in emergency planning, chemical weapons preparedness, and radiological preparedness were promised to others,

4

Case 1:06-cv-00255-GK   Document 1   Filed 02/13/2006   Page 5 of 11

in advertisements for new positions or through re-assignment to other Department of Agriculture employees.

    b. The Agency issued the Plaintiff a reprimand on October 26, 2004, for late payment of her government issued credit card.

        i. The reprimand was issued without providing due process required by regulation and without addressing mitigating factors.

        ii. The Plaintiff's supervisor caused needless emotional distress by handing the reprimand to the Plaintiff minutes after acknowledging that her work was outstanding.

    c. The Agency isolated the Plaintiff by restricting her from communicating with supervisors and co-workers, and restricting her interaction with senior government officials.

    d. Agency officials disparaged the Plaintiff through inaccurate personnel files that excluded positive information and included negative accusations for which no due process had been accorded.

    e. The Agency failed to promote the Plaintiff or to hire her for a Physical Scientist (GS-14) position for which she was best qualified because she had successfully performed the duties since 1992, but for lower pay.

### VII. THIRD CAUSE OF ACTION

The Plaintiff is informed and believes that she has been subjected to violations in accordance with the Standards of Law indicated in section IV, as described below.

The Plaintiff's supervisors displayed biased and discriminatory expectations regarding her abilities in ways such as the following:

5

a. Plaintiff's second tier supervisor told her that she should not expect a second "outstanding" performance appraisal for the appraisal period that had only just begun. Plaintiff's supervisors allowed a junior male co-worker to take over her duties as exercise coordinator.

b. Plaintiff's supervisors typically denied her prestigious and career-enhancing assignments while giving them to less qualified employees who were younger, had no perceived or real disability, had not engaged in protected activities, and in some cases also were male.

c. Plaintiff's supervisor said, in an affidavit, that the Plaintiff was precluded from applying for a security clearance and from being assigned to Recorder duty.

d. Plaintiff was precluded from making presentations to senior officials of her own successful work, such as a multimedia exercise presentation, in favor or younger male and female coworkers.

e. Plaintiff's supervisors repeatedly demonstrated bias in favor of a younger, male coworker in implementing restrictions on travel for training, meetings and exercises, although the Plaintiff's work has been described as superior.

## VII. FOURTH CAUSE OF ACTION

The Plaintiff is informed and believes that she has been subjected to violations in accordance with the Standards of Law indicated in section IV, as described below.

The Agency denied the Plaintiff due process, through actions such as the following:

a. issued her a reprimand for late payment of a government issued credit card, as described in VI, above.

6

b. maintained Personnel files that included files with negative inferences, filed without regard to due process requirements.

c. maintained Personnel files that excluded files with positive inferences, such as awards and an "outstanding" performance appraisal.

## VIII. PRAYER FOR RELIEF

Wherefore, the Plaintff respectfully requests that the Court enter judgment in her favor and award the following relief:

a. a jury trial.

b. attorneys fees and costs

c. an order restraining the Agency from further retaliation, harassment and disparagement

d. back pay and front pay for denied promotions

d. to be made whole

e. any other remedy a jury deems appropriate

*Linda M. Lewis*

Linda M. Lewis, Plaintiff, *pro se*
8811 Colesville Rd, #210
Silver Spring, MD 20910
(202) 210-8539

EXHIBIT A

March 8, 2005

Director
Office of Civil Rights
U.S. Department of Agriculture
Room 326-W, Whitten Building
1400 Independence Avenue, SW
Washington, DC 20250-9410

Subject: New EEO Complaint

I wish to file a new complaint of discrimination (gender/female, age/54, perceived disability) and reprisal for prior EEO activity, in violation of federal civil rights laws. I cite the following justifications:

1) In 2004, as an employee of the Office of Food Security and Emergency Preparedness (OFSEP), I filed two EEO complaints of discrimination and reprisal against officials of the Agency, the second complaint against OFSEP being submitted twice (November 12 and December 10).

I submitted an application by fax on November 19, the closing date, for the position of Physical Scientist, GS-1301-14 (Bulletin: FSIS-05-009), which includes the responsibility of representing FSIS and USDA in activities of the Chemical Stockpile Emergency Preparedness Program and advising the head of the office on protection of the food supply from chemical threats. Those are the same responsibilities that I carried out, successfully, at FSIS from 1992 through 1998, as a GM-13, until the duties were taken from me in reprisal for my protected activities, and given to a less-qualified male employee.

When the above position was posted on October 22, 2004, the announcement stated that the position was open to USDA employees. After I submitted an application that fully met the stated requirements of the position, USDA apparently withdrew the announcement and re-issued it. The new announcement was identical to the previous one except that FSIS had expanded eligibility to "All Qualified U.S. Citizen.s" I was never informed of these changes. The new announcement did not include the usual wording that all who had applied to the first announcement would automatically be considered for the second.

Having fully met all of the requirements of the original position, and having successfully fulfilled those duties for a period of nearly six years – indeed, making outstanding contributions to that program which I detailed in my application - I should have been selected for FSIS-05-009. Moreover, the posting of the position as a GS-14 position constitutes an implicit acknowledgement that my prior work on chemical weapons preparedness was GS-14 level work - for which I was being paid a GS-13 salary. On that basis, I deserve an immediate retroactive promotion to GS-14.

The denial of FSIS-05-009 is part of a pattern of discrimination whereby I am rejected for duties, jobs and promotions, in favor of less qualified individuals who are not part of my protected group of females over 40, with *perceived* disability, who have engaged in protected activity.

06 0255
FILED
FEB 1 3 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2) I have learned that my official personnel file does not include any copy of my latest performance appraisal, which was "outstanding," or two Spot Awards recognizing my accomplishments in developing emergency kits and exercises. Moreover, the file includes false information that, along with the omissions, would unfairly and negatively affect any decisions made on the basis of that file. This is part of a pattern of false information about my abilities and accomplishments.

3) I have been subjected to discrimination and retaliation regarding awards, and regarding assignments that would reasonably lead to awards. I and other employees who worked on an emergency exercise, "Broken Image," were given Spot Award certificates. Previously, I had been told that my work on the exercise had been hugely successful and was highly regarded by Agency senior officials. Other employees, whose accomplishments were less inventive and did not require as much time and effort, also were given certificates. But, although the supervisor said those present would be receiving cash awards, my certificate was not accompanied by any of the paperwork required to accompany a case award. No such paperwork is including in my official personnel file, either. Indeed, my OPF does not include copies of any of the two certificates I have received..

I was originally assigned to develop and coordinate the Broken Image exercise. After the project began receiving praise, the coordinator role on that project was taken away from me and given to a lower ranked male employee with lesser skills. Since that time, the same male employee has been designated the coordinator for all subsequent emergency exercises. Notably, that employee, Ronald Graham, has previously engaged in retaliation against me, slandering my skills and character, in support of discrimination and retaliation by more senior officials. Despite knowing this, senior managers have persisted in giving Mr. Graham regular access, while formally ordering me to communicate only with my immediate supervisor. In this manner, my viewpoints and abilities are routinely excluded in favor of a male employee who engaged in unlawful activities.

Subsequently, I was given a small role in a later exercise, "Nerve Pulse," coordinated by Mr. Graham. But, after I filed an EEO complaint, Mr. Graham informed me that my services would not longer be needed for the exercise. This was confirmed by Suzanne Rigby, my immediate supervisor at that time. As a result, I was excluded from awards that were subsequently given to those who participated in the exercise. Being denied fair consideration for cash awards would be consistent with a pattern in which I am denied awards given to all others who worked on a project, or on a particular staff. Also, available evidence suggests that, when I do receive an award, it is a lesser one, even when my contributions are more significant.

4) Inaccuracies in my official personnel file (OPF) show evidence of bias and retaliation. The maintenance of a negatively biases personnel file would expectedly have negative impacts on my career, including my pending application for a position.

The OPF includes no copy of my most recent performance appraisal, signed by Lori Thomas, giving me a rating of "outstanding." It does not include copies of either of two Spot Award certificates issued in the past year. But, the OPF DOES include multiple copies of documentation of false charges and the negative actions that resulted from them. With regard to the false charges, the Agency denied me due process and gave me no opportunity to provide any input before the negative actions were taken. The negative actions included denial of a within-grade (pay) increase for FY 1998, and a reprimand for late payment of a balance on the Agency credit card, issued for travel expenses.

The denial of my regularly schedule pay increase had no basis in fact. I was not given a performance appraisal documenting inadequate performance. In fact, I received no appraisal at all for FY 1998, and had been given few duties to perform, in retaliation for my protected activities. For several months in 1999, I had virtually no duties. The lack of any basis for denying the routine pay increase is demonstrated by the fact that the Agency ultimately paid the increase and the failure of the Agency to put me on a performance improvement plan. Thus, the multiple documents in my OPF, indicating a denial occurred, are false and misleading.

Regarding the documentation of a reprimand for late credit card payment, FSIS violated written procedure and due process by failing to allow me any opportunity to respond to the charges. Furthermore, an OIG report shows that the issuance of a reprimand was inconsistent with USDA/FSIS written procedure and implementation.

The above incidents are part of a pattern of discrimination and retaliation through false charges and denied due process. The propagation of false and disparaging information about me also is part of a pattern of discrimination and retaliation.

5) I continue to be denied access to information, opportunities, assignments and senior personnel that is available to males, and to females with no prior protected activity. Furthermore, denial of information expectedly would have negative impacts on those assignments I do receive, which typically are minor and are not valued by reviewing officials and more senior management. Unlike other employees, I have even been placed under written orders restricting my ability to communicate with anyone but my immediate supervisor. Meanwhile, a male coworker, Ronald Graham, freely communicates with Agency officials at the highest levels, sharing with them his negative opinions of me and other women on the staff. This is part of a pattern of negative bias on the part of Mr. Graham and other FSIS officials, and of reprisal for protected activities.

The above discriminatory and retaliatory practices, and others, have served to undermine USDA and FSIS emergency programs. I have been prevented from obtaining information needed to create a radiological emergency plan for the Agency, and that denial of information undermines the Agency's ability to participate appropriately in a multi-million-dollar national emergency exercise that conceivably could require implementation of that plan. Thus, discrimination and retaliation waste taxpayer dollars and weaken homeland security.

Signed,

*Linda M. Lewis*

Linda M. Lewis
(202) 210-8539

cc  FSIS Civil Rights Office



Case 1:06-cv-00255-GK   Document 1   Filed 02/13/2006   Page 11 of 11

March 8, 2005

Director
Office of Civil Rights
U.S. Department of Agriculture
Room 326-W, Whitten Building
1400 Independence Avenue, SW
Washington, DC  20250-9410

Subject: New EEO Complaint

I wish to file a new complaint of discrimination (gender/female, age/54, perceived disability) and reprisal for prior EEO activity, in violation of federal civil rights laws. I cite the following justifications:

1) In 2004, as an employee of the Office of Food Security and Emergency Preparedness (OFSEP), I filed two EEO complaints of discrimination and reprisal against officials of the Agency, the second complaint against OFSEP being submitted twice (November 12 and December 10).

I submitted an application by fax on November 19, the closing date, for the position of Physical Scientist, GS-1301-14 (Bulletin: FSIS-05-009), which includes the responsibility of representing FSIS and USDA in activities of the Chemical Stockpile Emergency Preparedness Program and advising the head of the office on protection of the food supply from chemical threats. Those are the same responsibilities that I carried out, successfully, at FSIS from 1992 through 1998, as a GM-13, until the duties were taken from me in reprisal for my protected activities, and given to a less-qualified male employee.

When the above position was posted on October 22, 2004, the announcement stated that the position was open to USDA employees. After I submitted an application that fully met the stated requirements of the position, USDA apparently withdrew the announcement and re-issued it. The new announcement was identical to the previous one except that FSIS had expanded eligibility to "All Qualified U.S. Citizen.s" I was never informed of these changes. The new announcement did not include the usual wording that all who had applied to the first announcement would automatically be considered for the second.